All right, our third case for this morning is Denan v. TransUnion. So Mr. Kettle. Good morning, may it please the Court. At a minimum, it is plausible to assert that TransUnion acted unreasonably when it failed to follow its own procedures to ensure or to assure maximum possible accuracy. I think it's important to read the statute. The statute doesn't have the word technical accuracy in it. It doesn't have factual accuracy in it. The statute is very clear that the credit reporting agency must employ reasonable procedures to assure maximum possible accuracy. The Kouropoulos Court stated Congress did not limit the Act's mandate to reasonable procedures to assure only technical accuracy. To the contrary, the Act requires reasonable procedures to assure technical accuracy. Certainly reports containing factually correct information that nonetheless misread their leaders are neither maximally accurate nor fair to the consumer who is the subject of the report. So we need to decide on this accuracy business whether we're going to stay with those cases that have said this really just involves factual accuracy or whether as TransUnion develops its procedures and its counterparts, of course, in the industry, do they need to put procedures in place that would enable them to spot loans that might for some reason be legally unenforceable, whether because they violate some state consumer protection law or whether because they have passed the statute of limitations or I can other legal issues. And what TransUnion says is, sure, hold our feet to the fire on the factual points. And you could even say, I mean, we can think about what those factual points may be, but asking us to do a dive into the legal enforceability of a transaction between third party A and the person whose credit report we're compiling is too much. You know, we're not in the best position to do that. It would require really quite a different set of procedures. Yes, Your Honor. And this is the paradigmatic case for that question because there are no new procedures needed. Well, but they say there are. Now, we can think about that. You know, you could start with the fact that these lenders have some link. You know, we can talk about what that link is to Indian tribes and potentially tribal law or tribal sovereign immunity or tribal restrictions. We can think about, you know, those states' laws apply to this. It seems to me that there's a non-trivial inquiry. Even if it's easier than they say it is, it's harder than you say it is. Your Honor, with all respect, it is trivial in the sense that TransUnion had its own procedures in place. It has a credentialing department. In the credentialing department, the employees are given a chart, a checklist of state laws and state legal requirements before they report loans. They don't report loans for credit furnishers that do not meet their requirements. And they have to determine if, in fact, they have the requisite licensing in order to make those loans. In this case, it's undisputed that TransUnion admits lenders must be legal in the states in which they operate. It's also undisputed... And so, well, let me ask you this. If you had brought this case exclusively about the procedures that TransUnion follows, and you said TransUnion does not check for state-required licenses in every state in which its furnishers are doing business, I don't understand you to be making just that claim. Your Honor, we are making that claim and going beyond that claim. But at its simplest level, it is that claim. And we were lucky enough to get, fortunate enough, we pushed for it, to get one deposition in the case before the case was dismissed. And that was of the Director of Compliance for TransUnion. And the Director of Compliance acknowledged that. They had this legal checklist. They go through and they make certain that people are licensed in the states in which they operate. They acknowledged that these two tribes... And operate means what? If you're a furnisher of credit and you extend a loan to a consumer... Suppose I'm a furnisher of credit here in Illinois, and I extend a loan to a consumer in Indiana. What's TransUnion supposed to do? Where do they think I'm doing business? That's the interesting point, Your Honor. TransUnion disclaims any responsibility to make a legal determination. Well, what's the answer to my question though? I'm a furnisher in Illinois, and I decide I'm going to loan some money to a person who's domiciled in Indiana. No question, Your Honor. Your loan takes place in Indiana, and the laws of Indiana govern that loan. Even if the person drove into Chicago and visited my little storefront payday loan facility? Now, that becomes different, but that's not the case. They're still domiciled in Indiana. Those are not the facts in this case. These loans were extended nationally over the every case that has looked at this, it is undisputed that when an Indian tribe operates off the reservation, whether directly or by the internet, it must comply with the laws of that state. It's been the Supreme Court's in 1973. Like a weird technical question. Are Great Plains Lending and Plain Green tribal corporations? They must be. They're not the tribe as a... They are corporations in more than just the reservation. So they have like the collections department for Great Plains is not on the reservation. Things of that nature. So in this case, we had the director of compliance for TransUnion acknowledging that they require a license in the states in which they operate. Acknowledging that the only license they were provided was the tribal license. In the case of Great Plains... Yes, Your Honor. That's an interesting question. So if TransUnion were dealing with a more ordinary, in other words, not tribal with all the extra complexities of Indian law, but a more ordinary lender, and the lender said, we have a license to do business in Illinois, would TransUnion also demand the disclosure of licenses in any other state where a customer got a loan? Yes, Your Honor. Good question. The answer is they should, but it appears that they do not. And that's the legal determination that TransUnion made. The irony is they say, we don't make legal determination because right now... That's about a disclosure requirement rather than whether the underlying loan is void and unenforceable. I think you muddy up the case by focusing on the void and uncollectible. Well, Your Honor, actually, I'm sorry, Your Honor. No, go ahead. In these 18 included states, the law is clear that if you don't have a consumer lending license and you offer loans as these loans, then the loans are void ab initio. It's that clear. And TransUnion knew, in fact, in their files, which we were able to get limited discovery, they spoke with, in the case of Great Plains, the TransUnion credentialing employee, noted the need, talked with the state of Oklahoma, and was advised that an Oklahoma state license was required if the tribe was operating outside of tribal land. Subsequent to that, the TransUnion credentialing employee noted in the file the need to confirm licensing in other states, but then waived the requirement for other states because the lending was on tribal land. In the deposition of TransUnion's Director of Compliance, she acknowledged the lending was not on tribal land. Similarly, with respect... Well, that could be a factual question, it seems to me. Yes, Your Honor, and that's why it should be reversed and remanded for a factual... Because it goes to, these loans are void ab initio. The issue is... You're assuming that this is not one of those laws that can be altered by agreement of the parties. Obviously, as we all know, there are some laws that are just default laws if the parties haven't agreed, and other laws that are not subject to displacement by agreement. And yes, Your Honor, you're correct. And once again, we cited in our brief, every case that has looked at this has found that as a matter of public policy, states will not waive the application of their laws, particularly in an area such as consumer lending, to allow a choice of law provision or a waiver in a private agreement of this nature. And it's without dispute. Similarly, with respect to Plain Green, the credentialing employee charged with Plain Green contacted the Montana Secretary of State's office and, quote, per operator, a tribal business does not need to file unless they are conducting business outside of the tribal community. Again, interdeposition... Oh, same employee noted in the credentialing file, I need to confirm if lending is only being performed within the tribal community. Once again, in our limited deposition, TransUnion's Director of Compliance acknowledged that TransUnion's own records reflect that Plain Green was operating lending outside of the tribal community. In addition to those red flags, they also received a cease and desist order from the state of Connecticut, in which the state of Connecticut found, at no time relevant hereto, was Great Plains licensed as a small loan lender in Connecticut, nor was Great Plains exempt from such licensing requirements. With respect to the New York Attorney General's Office, they... No, you have all of this in your brief. If you'd like to save a little rebuttal time, you might consider doing that. Yes, Your Honor, I would. Thank you. Thank you. Mr. O'Neill. Good morning. I may please the Court, Mike O'Neill, on behalf of Defendant Appley. Your Honor, before I get to addressing Mr. Goodell's comments about the reasonable procedures case, I'd like to redirect this Court as to what was that issue. The motion to dismiss that was filed was challenging the inaccuracy element of both of the FCRA claims that plaintiffs brought. Both Section 1681EB, the so-called accuracy provision, and 1681I, the reinvestigation provision, both have two elements. One, that the plaintiff has to prove that there was an inaccuracy reported or maintained by the credit bureau, and then the second was that those inaccuracies were caused by unreasonable procedures. Right. So as I understood your position, that's why I was saying that there was a little bit of muddying going on. As I understand your position, enforceable or not, there were the two loans. Enforceable or not, no one is saying like the amount or, you know, something like that. And so from TransUnion's point of view, as I'm understanding your argument, that was enough. Now whether the Great Plains Lending or Plain Green corporations should have been loaning to people in New Jersey or Florida or anywhere else for that matter, your argument crosses the line over into their legal status. I guess some of the cases have come close to the line. The line between legal and factual accuracy does not strike me as a crisp one. You know, it seems that, you know, if where something is jotted down in an Indiana court record, you know, is a factual question, then that gets kind of legal-ish, it seems to me. So why shouldn't we say that TransUnion at a minimum, maybe on the reinvestigation part, have double-checked to make sure these were licensed lenders in the places where they made the loans? Well, Your Honor, first off, I agree with you that the legal-factual distinction is a bit blurred. I think here's the best way for this court to look at it, Your Honor. As Your Honor recognized, there's no dispute that what TransUnion reported was accurate. TransUnion reported that these two individuals took out loans. TransUnion reported that those loans had been paid in part but not paid in fold and that there were balances still remaining. TransUnion did not report that these lenders had licenses in all 50 states. TransUnion did not report that the loan agreements by which the plaintiffs agreed that that state law did not apply to those loans, that those agreements were enforceable. TransUnion did not state that these entities were entitled to tribal sovereign immunity, and TransUnion did not state that that the rates weren't usurious, because those are all things that were not decided. There has been no adjudication that these loans were invalid, and instead of suing the lenders, like many others have, these plaintiffs chose to sue TransUnion and force TransUnion to say, well, we know that we haven't obtained an adjudication. We know that these loans are factually accurate, but we want you to take our mere belief, that's what Mr. Deenan said, our mere contention, that if we went to try to invalidate these loans, we would prevail. That's the distinction between factual accuracy and my legal contention, if you examine a TransUnion will prevail. So you would agree that if there had been a lawsuit brought by Ms. Paget, for example, saying that these are unenforceable loans because there was no Florida license, that TransUnion would have the obligation to make a notation of that in its records and say this was all bad? Your Honor, I would not only agree with that, but the record demonstrates that that's what TransUnion did. Although one of the included states is not Connecticut, the Connecticut Department of Banking issued an order saying that these loans were invalid, Connecticut loans. TransUnion immediately removed all non-zero accounts from its file. That's a pro-consumer decision because you want to keep the good accounts on the file. Ironically, it turns out that that Connecticut order was later reversed on appeal, sent back down to the Banking Commission, told to do a tribal sovereign immunity analysis. It did, and that went back up. The Connecticut Superior Court said, no, you did it wrong. Do it again. So even though that order is still on appeal today, as soon as TransUnion learned that the Connecticut Banking Commissioner had invalidated the loans, all the Connecticut loans were wiped out. And that's a distinction between a factual inaccuracy and a legal inaccuracy. A lot of the cases that the plaintiff relies upon, ironically, are claims where there was an adjudication. There was a bankruptcy discharge, and the question was, did the Bureau properly characterize the discharge? Those are not matters of interpreting law. Those are not matters of deciding, was that order discharged? Was he guilty of a felony or of a misdemeanor? That had already been adjudicated, and the court ordered. Most notably, the only case that plaintiffs cite for the proposition that these loans were inaccurate is the Henson case of this court, Seventh Circuit, 1994, well before the Carvelo de Andre documents had been developed. And there the issue was, an order had been entered against one brother on a car loan, and the other bureaus believed they read the judgment docket, not the order. They read the judgment docket as saying the order had been entered against both brothers. The Henson court just looked at Indiana court rules and said, no, you have to look at the underlying claim. So there's never been one single court, district court or appellate court, that has agreed with plaintiffs that if there's a contention that these loans may be invalidated someday, that that makes it inaccurate. And it's entirely well established by this court and every other appellate court to consider the issue, that you don't even get to the issue of reasonable procedures until you've established an inaccuracy. And the plaintiffs have not done that. Right. I mean, because that's important in some ways, because you could imagine, I mean, obviously underlying all of this is your contention that both for the original reporting of loans and for the reinvestigation, transunion, on the whole and by and large, relies on information that come from the furnishers, right? I mean, they don't do some massive, independent, factual investigation of things. When there's a challenge to something, they just write to the furnisher again and say, did you make this loan right? That's right. And that's the way the Act operates, Your Honor, because the reason why the Bureau can rely upon the reporting by the furnishers is that the furnishers have their own independent obligations to make sure that what they're reporting is accurate. But I guess one of the issues here, and maybe we don't reach it, if you're right about the accuracy threshold requirement, but one of the issues is, should transunion have let Great Plains and Plain Green be furnishers at all? Did they go through the right qualification process? Well, Your Honor, the credentialing process that the plaintiffs have referred to is actually driven by Section 1681EA, and the plaintiffs haven't suggested that we violated that provision. That provision says that you have to investigate your clients, make sure that they are who they say they are, i.e. lenders of information, and make sure that they have permissible purposes to get credit reports. And we did that. Not only we went to the reservation, Your Honor, we saw their offices on site. We did an extensive credentialing of these folks. Mr. Goodell suggests that the fact that they did not have a license in every state should have meant that it would be inaccurate to report all these loans. Well, first off, Your Honor, Mr. Goodell misstates to this court what our procedures were. I believe it's paragraph 73 of the complaint at the appendix 21. The allegation is that transunion checks to see if the potential client has a license, singular, meaning if you have a license in the domicile where you are, that indicates that you are who you say you are. Our procedures are not to see if there are licenses in every state of the country, and there's been no suggestion by plaintiffs that somehow that is a requirement. But even if transunion went further than is necessary and discovered that the lenders are not licensed in every state, that doesn't prove anything. Not all states require licenses. Even if they were licensed, that doesn't mean that the loan is invalid. And finally, to make this point, Your Honor, the deposition that plaintiffs referred to, that occurred after the briefing of this case. And all those allegations about our procedures are not in the original complaint. They're in the first amended corrected complaint. And transunion had no problem with the plaintiffs amending their allegations. And you know why? It's in our supplemental appendix. Because that motion to amend expressly said these new allegations do not raise new claims, do not add new parties. That amendment motion expressly says these go to the issue of reasonable procedures. And that's why transunion said, Your Honor, you should be applying our motion to the amended complaint. And the plaintiffs agreed, and the judge agreed. Because all those allegations, which are the focus of the briefs, are wholly irrelevant to whether or not the information is inaccurate in the first place. Which is what you understand as the threshold that needs to be passed before anything else. Even the plaintiffs did not deny that is black letter law in this court, and I believe every appellate court to consider it, that you don't get to the thorny issue of reasonable procedures if there's been no reporting of inaccurate information. So unless there's any other questions, Your Honors. Thank you. I see none. Thank you very much. Your Honor, enforceable or not is not the standard. If enforceable or not, if it can be simply accurate as to who shot, who did what to whom when, then transunion, if that's the rule that's adopted, and that's adopted by this court, then that frees transunion and the other credit reporting agencies to report loan sharking, to report any illegal loans. They have no obligation as long as they get Larry the Leg Breaker's name right, and they get the amount of the vigorish right. There has to be more than that. Well, I mean, I suppose one answer, I mean, no one wants that outcome, I suppose, but it's not just a legal regime that covers the reporters. It covers the furnishers as well. So there are a lot of problems with the loan sharks that might be picked up at furnisher level at a case brought by one of the borrowers against that person. As soon as the loan is declared illegal, then the credit reporter has to stop reporting it. But that's exactly what's happening in this case. First, Your Honor, there are cases ongoing right now against Plain Green and Great Plains, and I think the court's aware of that. We've cited it in our briefs. So this is simply, we're trying to stop the reporting of these illegal loans. That's a fact. But they haven't been adjudicated yet illegal. Your Honor, there are a lot of things that don't have to be adjudicated to make them so. And so I think as a factual matter, these lenders are not licensed, and we're not talking about all 50 states. We're talking about 18 states, which very clearly set out that if you are commercially lending in our state at this level, then you must be licensed to do so. You must have a consumer lending license. TransUnion knows that. They knew it. It's reflected in their paper and their credentialing file, and they ignored it. These loans are misleading because they suggest that these people are less creditworthy than others because they refused to pay back loans that had interest rates in excess of 300 percent. There is no loan that has an interest rate of 300 percent or more that's consensual. These people are desperate people. They go online. They take out a payday loan. Some of the times the interest rates went in excess for 800, 900 percent. They use TransUnion as their collection agent. Mr. Deenan himself was told by TransUnion's representative that because of the loan that is at issue in this case, his credit score was 37 points lower than it would have been otherwise. The fact that he refused to pay a loan that had interest rate in excess of 300 percent does not mean that he is uncreditworthy in a normal lending context. That's what's misleading about it. When they say due and owing, that is misleading. That was the test in several of the cases before the court right now. They found inaccuracy simply by reporting a loan as due and owing when it was not. That's the issue in this case. There are no new procedures. The fact that we got discovery after the motion to dismiss was briefed does not mean that these claims were not in our original complaint. We've stated our claim in the original complaint that these lenders were not licensed in these states. That's why the whole focus of the lawsuit was over 18 included states. These states are the ones that required licensing to promote loans of this nature or to extend loans of this nature. We focused on them. We simply got the facts to demonstrate that, in fact, there were no new procedures required. We didn't know until we took that discovery that, in fact, TransUnion already does this. This is the height of reasonable procedures, procedures that they already employ, but they're not following. Thank you, Your Honor. Thank you very much. Thanks to both counsel. We'll take the case under advisement.